**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

SHAWN POLINER, individually, and on
 behalf of all others similarly situated,

       Plaintiff,                          COLLECTIVE ACTION
                                         Case No.:

v.

MANAGED LABOR SOLUTIONS, LLC,

       Defendant.
_____/

**FLSA SECTION 216 COLLECTIVE ACTION COMPLAINT**

     Plaintiff, SHAWN POLINER, individually, and on behalf of all others similarly situated who consent to their inclusion in this collective action, by and through the undersigned counsel, sues Managed Labor Solutions, LLC (hereinafter as "MLS" or "Defendant"), pursuant to 29 U.S.C. § 216(b), of the Fair Labor Standards Act (FLSA) for unpaid overtime compensation and states as follows:

**JURISDICTION AND VENUE**

    1.     This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. §216 (b), the Fair Labor Standards Act and 28 U.S.C § 1331.

    2.     This Court has personal jurisdiction over this action because MLS operated substantial business in Duval County, Florida, and the damages at issue occurred in Duval County, Florida and within this district.

    3.     Venue is proper to this Court because the acts complained of occurred within this District at MLS's location in Duval County, Florida.

## PARTIES, JURISDICTION AND VENUE

4.      Plaintiff, SHAWN POLINER (hereinafter as "Poliner" or "Plaintiff") resided in St. Mary's, Georgia during all times material, and worked at MLS as a Transporter at the Jacksonville International Airport in Jacksonville, Florida from on or about September 8, 2019, to on or about March 26, 2020.

5.      MLS is a foreign limited liability company with a principal address of 5235 Oakview Dr., Allentown, PA 18104.

6.      MLS can be served via its current registered agent, NRAI Services, Inc., 1200 South Pine Island Road, Plantation, FL 33324.

7.      MLS is an "Employer" within the meaning of the FLSA as they set the compensation plan, work schedules, and directed and supervised the work of Plaintiff.

8.      Upon information and belief, MLS has business revenues exceeding $500,000.00 annually.

9.      MLS qualifies for and is subject to enterprise coverage under the FLSA for the relevant time periods pertinent to this Complaint.  In other words, MLS is subject to the FLSA.

10.     Poliner was an employee of MLS within the meaning of FLSA § 203.

11.     Defendant had continuous business contacts and business activities operating and staffing employees on a continuous basis in Jacksonville, Florida within this district and is subject to the jurisdiction of this court.

**GENERAL ALLEGATIONS**

12.     The FLSA provides that, with certain exceptions, employers must pay hourly paid employees a premium rate of pay, meaning overtime pay, for all hours worked over 40 hours in each and every workweek at the rate of one and one-half times their regular hourly rate.  *See* 29 U.S.C. § 207(a)(1).

13.     MLS is a business enterprise offering outsourced labor forces to small and large businesses, including car rental companies at airports and city based locations across the U.S.A.

14.     MLS took over a contract that was previously held by ABM, and on or about September 8, 2019 began providing outsourced labor to the Hertz Corp for its Hertz/Dollar lot located at the Jacksonville, Florida airport.

15.     Poliner worked at the MLS Jacksonville airport location as a Transporter or driver.

16.     The job duties of a Transporter are to transport a car from the return lot, the location where customers return their rental cars, to an area where the rental cars will be cleaned and refueled.

17.     At all times material, Poliner and all others working as Transporters and drivers for MLS do not fall within the classes of employees who are exempt from the FLSA's minimum wage or overtime provisions.  29 U.S.C. § 213.

18.     As a non-exempt employee under the FLSA, Poliner and other Transporters and drivers were entitled to be paid for all of the overtime hours worked at a rate equal to one and one half (1.5) times their regular rate of pay.

19.     When MLS took over the Hertz contract from ABM, MLS promised Poliner and others similarly situated that the terms of their employment would remain the same.  This meant

for Poliner and other Transporters and drivers that their rates of pay of $10.00 per hour would be the same under MLS.

20.     However, MLS never honored this promise and made frequent changes to the promised rate of pay, at points tying the rate of pay to a productivity bonus which was frequently, and arbitrarily amended by MLS.

21.     Despite meeting the criteria to earn the promised productivity bonus, Poliner was never paid the productivity bonus, and thus, throughout his employment with MLS, Poliner was paid just $9.00 per hour.

22.     During the period of  December 23, 2019 to January 5, 2020, Poliner worked and reported his hours on the standard company provided timesheet.

23.     Poliner filled in 83.66 hours worked which thus included overtime hours worked.

24.     When Plaintiff was paid for this 2 week period of time, MLS paid Poliner for only 75.75 hours worked and removed all the overtime hours and paid him only straight time, meaning no premium or overtime pay for any hours.  *See* **Exhibit 1.**

25.     Poliner, and all other hourly paid drivers and transporters routinely worked more than 40 hours per week without receiving compensation for all of the overtime hours worked.

26.     MLS fraudulently, unlawfully and willfully edited employee time records, shaving, deleting and modifying hours worked to avoid paying overtime compensation owed to hourly paid employees.

27.     Poliner frequently complained of missing hours from his paycheck to Isis Rivera (Rivera), the Human Resources Manager in the MLS Jacksonville office.

28.     Rivera raised Poliner's questions regarding missing hours to her superiors who worked at the MLS office in Orlando, Florida.  They claimed they would conduct an investigation into the hours missing from Poliner's paycheck, but upon information and belief, no such investigation was ever conducted.

29.     Rivera was trained to work in the Human Resources department of MLS by fellow MLS employee Dubraska Franco (Franco).  During this training, Rivera witnessed Franco edit an employee's timesheet from stating 10 hours worked in a day to 8 hours thereby removing overtime hours for the week.  Franco allegedly called this management conduct and policy "rounding."

30.     MLS is no stranger to the same unlawful pay practice alleged in this complaint, as MLS faced the same allegations of unlawful conduct occurring in a case in this district.  See *Enriquez and Aboulkhir v. Managed Labor Solutions*, No. 8:16-cv-1962T23AEP, (M.D. Fla. July 7, 2016); *Newman v. Managed Labor Solutions*, No. 2:18-cv-485, (D. Ut. June 15, 2018).   In the *Enriquez* case, MLS ultimately paid compensatory damages and liquidated damages of $3,500 and settled the case.

31.     Defendant's actions of editing, shaving, "rounding" time sheets to remove overtime hours or to reduce time worked by Plaintiff Poliner and all others similarly situated is a willful action to violate the FLSA.

32.     Accordingly, Poliner, individually, and on behalf of all others similarly situated who consent to their inclusion in this collective action, seeks recovery of all wages owed against Defendant for violations of the Fair Labor Standards Act for: (1) failing to pay the Plaintiff and

others similarly situated overtime compensation; and (2) failing to maintain and preserve accurate and true records of all hours worked.

## **COLLECTIVE ACTION ALLEGATIONS**

33.     Plaintiff brings this action individually and on behalf of all others similarly situated who worked as Transporters, otherwise referenced herein as the putative class, as a collective action pursuant to the Fair Labor Standards Act.  29 USC §216(b).

34.     This collective action is to recover from Defendant overtime compensation, liquidated damages, prejudgment interest, and the costs and reasonable attorney's fees under 29 U.S.C. §216(b) on behalf of the Plaintiff and all similarly situated persons composed of:

> All persons employed by or performing work for MANAGED LABOR SOLUTIONS, LLC as transporters, drivers or cleaners including all persons working under titles of Rental Car Driver, Rental Car Cleaner servicing rental car company locations in the U.S. at any time within the three (3) years preceding this lawsuit to the day of trial.

35.     Members of the putative class are so numerous that joinder of all members is impracticable and in the interests of justice, as well as in keeping with the legislature's intent in creating Collective Actions under Section 216(b), proceeding as a collective action is proper in this case.   While the exact number of the members of the putative Class is unknown to the Plaintiff at this time and can only be ascertained through appropriate discovery, upon information and belief, Plaintiff believes that there are 50 or more individuals in the putative class employed at any given time from the Jacksonville location alone, and within the three (3) year relevant class period upwards of 200 or more persons.

36.     MLS employs similar Transporters, drivers and cleaners in at least 14 or more different states including:   Florida, Georgia, California, Colorado, Oklahoma, Hawaii, Illinois,

Michigan, Wisconsin, Ohio, North Carolina, Pennsylvania, Texas and Virginia locations across the country, including employees working from the following 26 cities:  San Francisco, Denver, Durango, Ft. Lauderdale, Jacksonville, Miami, Orlando, Pompano Beach, Punta Gorda, Sanford, Sarasota, Tampa, Atlanta, Kahuai, Kona, Romulus, Charlotte, Raleigh, Dayton, Oklahoma City, Tulsa, Allentown, Irving, Midland, Richmond, Milwaukee.  This is based solely on MLS's current job opportunities as of July 1, 2020 on its website, a printout of which is attached as **Exhibit 2**.  In the short time MLS was operating at the Jacksonville airport, Poliner estimates there were 50 plus different persons employed as a Transporters or Rental Car Drivers.  Thus, assuming a turnover of 50 Transporters at each location, the estimated national class size is 1050 plus Transporters or Drivers.

37.     Plaintiff will fairly and adequately protect the interests of the putative Class of similarly situated Transporters, drivers and cleaners, and has retained counsel that is experienced and competent in class/collective actions and employment litigation.  Plaintiff has no interest that is contrary to, or in conflict with, members of the putative Class.

38.     A collective action suit, such as the instant one, is superior to other available means for a fair and efficient adjudication of this lawsuit.  The damages suffered by individual members of the Class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Class to individually seek redress for the wrongs done to them.

39.     A collective action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy.  Absent these actions, the members of the Class will

likely not obtain redress of their injuries and Defendant will retain the proceeds from its violations of the FLSA.

40.     Furthermore, even if any member of the Class could afford individual litigation against the Defendant, it would be unduly burdensome to the judicial system.   The instant methodology, when compared to voluminous individual actions, has fewer management difficulties and provides the benefits of unitary adjudication, economies of scale, and comprehensive supervision by a single court.   Concentrating this litigation in one forum will promote judicial economy and parity among the claims of individual members of the Class and provide for judicial consistency.

41.     Upon information and belief, all Transporters, drivers and clearns were trained on an ad hoc basis, including Plaintiff, without any formalized and structured training program.

42.     Plaintiff and all Transporters were not put through any structured or instructor taught formal or classroom type corporate training program.

43.     Upon information and belief, the same unlawful pay practice complained of herein occurred at airport locations across the US where MLF staffed employees and stemmed from a company and corporate created, mandated and driven policy to save millions in dollars in labor costs by removing hours from time records.

44.     There is a well-defined community of interest in the questions of law and fact affecting the Class as a whole.   Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its continued maintenance as a collective action, and Section 216b collective actions are favored and prompt judicial economy.

## COUNT I
## FAILURE TO PAY OVERTIME COMPENSATION

45.     Poliner adopts and realleges the preceding paragraphs as if fully set forth herein.

46.     During the statutory period, Poliner worked overtime hours while employed by MLS and was not compensated for all of these hours in accordance with the FLSA.

47.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA.  29 U.S.C. § 255(a).

48.     As a result of the foregoing, Poliner and the putative class have suffered damages.

49.     Defendant cannot have a good faith basis under the FLSA for the alleged conduct of editing, rounding and removing hours and willfully refusing to pay employees all hours worked, including overtime hours incurred.

50.     Plaintiff and all others similarly situated should be awarded double the sum in wages owed as liquidated damages, and a three (3) year statute of limitations should apply.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff SHAWN  POLINER, individually, and on behalf of all others similarly situated,  demands judgment against MLS including the following relief:

a.     An order designating this action as a collective action and issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated individuals across the nation with instructions to permit them to assert timely FLSA claims in this action by filing individual Consent to Join forms in this action as opt in plaintiffs pursuant to §216(b); and that notice be sent to all past and present employees of MANAGED LABOR SOLUTIONS, LLC, at any time during the three (3) year

period immediately preceding the filing of this suit, through and including the date of this Court's issuance of the Court Supervised Notice;

b.    An order awarding attorneys' fees and costs pursuant to §216 of the FLSA;

c.    That the Court find Defendant in violation of the overtime compensation provisions of the FLSA,and the record keeping requirements of 29 CFR part 516, and that the Court find Defendant's violations of the FLSA were and are willful;

d.    That the Court award Plaintiff Poliner and the putative Class of all similarly situated employees overtime compensation for all the previous hours worked over forty (40) in each and every workweek at the rate of time and one half (1.5) their regular rate of pay during the past three (3) years, AND an equal sum in liquidated damages.  In addition, interest on said award pursuant to §216 of the FLSA;

e.    That the Court award Poliner a collective action class representative or service award fee for his efforts and time dedicated to bringing justice through this action;

f.    That the Court appoint Mitchell Feldman, Esq. and the firm of Feldman Legal Group as class counsel in the FLSA collective action; and

g.    Approve Plaintiff as authorized class representative for all others who consent to join this action, to negotiate on their behalf; and

h.    That the Court award any other legal and equitable relief as this Court may deem appropriate, fair and just.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint and on all other issues so triable.

Respectfully submitted this 1st day of July 2020.

<u>*/s/ Mitchell L. Feldman, Esq.*</u>
**Mitchell L. Feldman, Esq.**
Florida Bar No. 008349
FELDMAN LEGAL GROUP
6940 West Linebaugh Ave., Suite 101
Tampa, Florida 33625
Telephone: (813) 639-9366 -Fax: (813) 639-9376
Email: mlf@feldmanlegal.us
Secondary: lschindler@feldmanlegal.us
*Attorney for Plaintiff and the class of similarly situated*