## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

SHAWN POLINER, individually,
and on behalf of all others similarly situated,

     Plaintiff,

                                          COLLECTIVE ACTION

v.                                       Case No.: 3:20-CV-00738-TJC-PDB

MANAGED LABOR SOLUTIONS, LLC

     Defendant.

---

## JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT AND ENTRY OF STIPULATED JUDGMENT IN FAVOR OF PLAINTIFFS

Plaintiff, SHAWN POLINER ("Poliner"), individually and on behalf of 12 opt in Plaintiffs: GODFREY MAINA, SAMANTHA HARTEL, KATISHA SLAUGHTER, JAMES WATSON, JULIAN MATTHIAS, JERRY HOOKS, RACHEL SANCHEZ, AMY PIGG, CAMERON MCKNOWN-BLEDSOE, ANGEL VANDERHORST, LATOYA MCCREA and JOSHUA DAVID RILEY, together with Defendant, MANAGED LABOR SOLUTIONS LLC, (HEREINAFTER "MLS"), by and through the undersigned counsel hereby jointly move for this Court's review and approval of the settlement agreement between the Plaintiff and Defendant (collectively the "Parties") and for entry of an order approving the terms of the settlement agreement attached hereto as Exhibit 1, and entry of a Judgment as per *Lynn's Foods*, and in support thereof state as follows.

1

## **INTRODUCTION**

Plaintiff and Defendant (collectively, the "Parties") have entered into a Settlement Agreement (the "Settlement Agreement") pursuant to which Defendant shall pay Plaintiff Poliner and the 12 Opt-In Plaintiffs who have filed their consent to join this action, a gross settlement sum of Twenty Five Thousand Dollars ($25,000.00) (the "Settlement Funds"), before deduction of advanced costs of mediation in the sum of $2446.25 to be reimbursed to Plaintiffs' counsel from the gross sum, in exchange for the release of Plaintiffs' wage claims and dismissal of this case. The Parties, by and through the undersigned counsel hereby move this Court for an order approving the terms of the Settlement Agreement, dismissing the case, entering judgment in favor of the Plaintiffs for the wages and attorney's fees approved, and retaining jurisdiction to enforce the terms of the Settlement Agreement. The Settlement Agreement represents a fair, adequate and reasonable compromise of the claims at issue in light of the existence of disputed issues of fact, disputed issues of law, questions of whether the Plaintiffs would obtain favorable judgment at trial, the significant expense of continued litigation, and the risks of possible appeals.

## **BACKGROUND**

1. Plaintiffs were formerly employed by Defendant primarily as drivers, transporters and other retail store location hourly, non-exempt employees.

2. On July 1, 2020, Plaintiff Shawn Poliner brought this action on behalf of himself and all other similarly situated employees pursuant to the Fair Labor Standards Act (the "FLSA"), claiming that Defendants violated the FLSA by failing to pay overtime compensation for all hours worked in excess of forty (40) during any given workweek [Dkt. 1].

3. Subsequently, 12 other former employees of MLS joined this action by filing consent to join forms. [Dkt. 6, 9, 14, 16, 19, 20, 23, 24, 26, 27].

4. Each opt in Plaintiff, in lieu of filing his or her own individual lawsuit or action, specifically authorized Shawn Poliner to negotiate and reach a settlement with the Defendant on their behalf and agreed to be bound by the terms of any such settlement reached according to the express terms of the Consent to Join Forms executed by them. (DE 6, 9, 14,16,19, 20, 23-24,26, 27).

5. The Plaintiffs combined alleged that MLS failed to pay overtime compensation for work performed, alleging they all worked off-the-clock, and that the company did not have accurate time records or an accurate time tracking system.

6. MLS answered the Complaint denying the Plaintiffs' claims and continues to deny any and all liability and any violation of the FLSA. MLS maintains that it properly paid the Plaintiffs for all hours worked, that Plaintiffs did not work off-the-clock, and that it maintained accurate time records.

7. MLS also made it clear that if the litigation would have continued, they would challenge any right of the Plaintiffs to proceed collectively.

8. Plaintiffs believe that their claims have merit.

9. The parties attended mediation on October 30, 2020, with Allen Blair, Esq. and reached a settlement.

10. The Settlement Funds that each Plaintiff receives pursuant to the attached Settlement Agreement, fairly and reasonably compensates them for their alleged unpaid overtime compensation and liquidated damages that they might be awarded by a court or jury.

11. Based upon Plaintiff's investigation and evaluation, Plaintiff and their experienced FLSA wage and hour attorneys have determined that the settlement set forth in the Settlement Agreement is in their best interests, and represents a fair and reasonable compromise of their bona fide claims for unpaid overtime wages. Plaintiff recognizes and acknowledges the expense and duration of continued litigation necessary to prosecute the claims of all Plaintiffs against MLS through summary judgment, trial and possible appeal would be time consuming, burdensome, and inherently uncertain. Moreover, given the challenges and complex litigation and discovery disputes that typically are involved in FLSA collective actions this case would, if continued, primarily would have been consumed by the amount of attorney's fees and costs both sides would incur rather than the damages or wages at issue.

12. Defendant provided Plaintiff's counsel with payroll and time records of the Plaintiffs demonstrating their alleged work hours and compensation, and Plaintiffs submitted Court interrogatories and exchanged written documentation in their possession to support their overtime wage claims.

13. After engaging in the early stages of discovery in this matter including exchanges of hundreds of pages of records, there remained many genuine issues of material dispute:

    a.  Whether Plaintiffs worked off-the-clock;

4

b.  Whether Defendant was aware of Plaintiffs alleged work off-the-clock;

c.  Whether or not Plaintiffs' overtime hours were calculated correctly and whether Plaintiffs were paid for all hours worked, including when working through lunches;

d.  Whether defendant violated the record keeping requirement of the FLSA such that it time records were inaccurate and should be rejected by the court;

e.  Whether a two or three year statute of limitations should apply;

f.  Whether Defendant acted in objective and subjective good faith such that payment of liquidated damages applicable;

g.  Whether Plaintiffs were compensated for all compensable hours worked, and

h.  Whether Plaintiffs worked in excess of forty (40) hours and if so, whether Plaintiffs received proper overtime compensation.

i.  Whether Defendant automatically deducted 30 minutes for meal breaks when plaintiffs and others similarly situated did not take such breaks.

14. Notwithstanding the foregoing, upon careful review of the Plaintiffs' payroll and time records, Plaintiff and his undersigned counsel determined that a compromise was in the best interests of all Plaintiffs.

15. Plaintiffs understood and acknowledged that had they proceeded to trial, there was an inherent risk to the statute of limitations limiting their wages to a two year period, back to approximately July 2018, and further that the court may decline to award liquidated damages.

16. On October 30, 2020, the Parties reached a settlement in principle at mediation, and the terms of the settlement were subsequently reduced to a formal FLSA Settlement Agreement, a copy of which is attached to this Motion as <u>Exhibit 1</u>. Plaintiff Poliner has executed the written settlement agreement individually and in his representative capacity and as agent for the opt in Plaintiffs.

17. The Plaintiff reached this settlement with advice of counsel and relying upon his counsel to analyze the payroll and perform wage calculations which would be pro rata to each of the plaintiffs according to their alleged unpaid overtime hours, the wages they each received, their own respective regular rates of pay and taking into consideration the exemption arguments and potential defenses of MLS. Moreover, some of the opt in Plaintiffs were paid overtime wages at times during their employment, including Mr. Poliner.

18. Pursuant to the terms of the Settlement Agreement, Defendant MLS has agreed to pay Plaintiffs the aggregate sum of $25,000,00 in gross wages, before deduction of $2446.25 for reimbursement to Plaintiff's counsel for advanced costs of mediation. The Settlement Agreement provides for an allocation of the net settlement sum of $22,553.75 for the 13 Plaintiffs as provided for in appendix to the Settlement Agreement, <u>Exhibit 1</u>, attached hereto.

19. The Parties note that this Court has previously approved FLSA settlements with general releases which had separate consideration in them, and here as pointed out the releases are mutual.

6

20. Pursuant to the terms of the Settlement Agreement, the Parties separately negotiated and agreed for MLS to pay Plaintiffs' attorneys' fees and costs, totaling $27,900.00, which included reimbursement of Plaintiffs' costs of $900, not including the $2,446.25 costs of mediation advanced by Plaintiff's counsel.

21. Plaintiffs' attorneys' fees and costs were separately negotiated and agreed upon by the Parties without regard to the amount paid to Plaintiffs so as not to affect the wages.

22. For purposes of settlement, the Parties stipulate that the quantum of attorneys' fees and costs is a fair and reasonable compromise of Plaintiff's attorney's fees pursuant to *Bonetti v. Embarq Mgmt. Co.*, 2009 WL 2371407, at *3-4 (M.D. Fla. Aug. 4, 2009).

23. The Parties have executed 12 individual Settlement Agreements consenting to and agreeing to both the individual payment amounts and the allocation of the attorneys' fees and costs as fair and reasonable. *See* Appendix B to <u>Exhibit 1</u>.

## <u>MEMORANDUM OF LAW</u>

**I.  THE COURT SHOULD APPROVE THE PARTIES' SETTLEMENT BECAUSE IT REPRESENTS A FAIR AND REASONABLE COMPROMISE OF DISPUTED CLAIMS**

### A.  The Settlement Meets the Requirements Set Forth in Lynn's Food Stores, Inc.

As the Eleventh Circuit explained in *Lynn's Food Stores, Inc. v. United States*, in the "context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations," the parties must present any proposed settlement to the district court, which "**may enter a stipulated judgment** after scrutinizing the settlement for fairness." 679 F.2d 1350, 1353 (11th Cir. 1982).  Settlements are "permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by

7

employees provides some assurance of an adversarial context." *Id.* at 1354. This is because the employees are "likely represented by an attorney who can protect their rights under the statute." *Id.* "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as coverage or computation of back wages, that are actually in dispute; [the Eleventh Circuit] allows the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Id.*

After scrutinizing the settlement, this Court will find that the Parties' Settlement Agreement is fair, reasonable and should be approved. The Stipulation resolves a *bona fide* dispute between the Parties with respect to whether the employees at issue are entitled to unpaid overtime compensation for work allegedly performed off-the-clock.

Furthermore, the Plaintiffs were represented by experienced FLSA counsel, who in the "adversarial context of a lawsuit," negotiated for all the Plaintiffs, a "reasonable compromise of disputed issues." *See id.* at 1354. When adjudicating motions for approval of settlements, courts operate under a "strong presumption" in favor of approval. *See Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977); *Lynn's Food Stores,* 679 F.2d at 1353.

In detailing the circumstances justifying court approval of an FLSA settlement in a litigation context, the Eleventh Circuit has stated:

> *Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise*

8

> *over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.*

*Lynn's Food Stores,* 679 F.2d at 1354.

Before approving a FLSA settlement, the Court must scrutinize it to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Id.* at 1354-55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

In determining whether the settlement is internally fair and reasonable, the Court should consider the following factors:

      A.  the existence of fraud or collusion behind the settlement;

      B.  the complexity, expense, and likely duration of the litigation;

      C.  the stage of the proceedings and the amount of discovery completed;

      D.  the probability of plaintiff's success on the merits;

      E.  the range of possible recovery, and

      F.  the opinions of the counsel.

*See Leverso v. South Trust Bank of Ala., Nat. Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994); *Dees v. Hydradry, Inc.*, 2010 WL 1539813, at *8 (M.D. Fla. Apr. 19, 2010); *Hamilton v. Frito-Lay, Inc.*, 2007 U.S. Dist. LEXIS 10287, at *2-3, (M.D. Fla. Jan. 8, 2007); *see also Hill v. Florida Indus. Elec., Inc.,* No. 6:06-cv-915-Orl-31JGG, 2007 U.S. Dist. LEXIS 9498, at *6, (M.D. Fla. Feb. 9, 2007); *Pacheco v. JHM Enters., Inc., et al.,* 2006 WL 948058, at *4 (M.D. Fla. Apr. 12, 2006). The Court should be mindful of the strong presumption in favor of finding a settlement fair. *Hamilton*, 2007 U.S. Dist. LEXIS at * 2-3*; see also Cotton v. Hinton.* 559 F.2d 1326, 1331 (5th

Cir. 1977); *Arce v. Doral Costa Servs., LLC*, 2017 U.S. Dist. LEXIS 181969, *2 (S.D. Fla. Oct. 31, 2017) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977))

**B. The Settlement Was The Result Of Arm's Length Negotiations Free From Collusion**

The settlement reached was the result of adversarial, arm's length negotiations in the context of a formal mediation over litigation in dispute which had been ongoing for three months, and if not resolved early on, would have resulted in perhaps two years of protracted and costly litigation. In determining whether a settlement was negotiated at arm's-length, courts look to whether there was "vigorous and comprehensive litigation" or whether the settlement was a result of collusion among the parties. *Pickett v. IBP*, 2001 U.S. Dist. LEXIS 22453 (M.D. Fla. December 21, 2001). Here the settlement was negotiated at arm's-length by experienced counsel, free from fraud or collusion. The Parties were able to settle this action only after they engaged in some limited discovery here, as well as analysis of the payroll records of the Plaintiffs.  See *Diaz v. Hillsborough County Hos. Authority,* 2000 U.S. Dist. LEXIS 14061, *11 (M.D. Fla. Aug. 7, 2000) (*quoting Cotton*, 559 F.2d at 1330) (Absent fraud and collusion, the court not only may rely on the judgment of experienced counsel, but "should be hesitant to substitute its own judgment for that of counsel"). Moreover, Plaintiff Poliner desired a resolution in lieu of protracted and costly litigation and time commitments with having to continue on and also have to commit to attending a trial whereas the amount of his wages he might receive beyond his recovery here going forward is unknown and speculative, and may not be more than this sum. More importantly, this matter was settled through a formal mediation process, such that it was devoid of any concerns of collusion or the Court should find that the settlement was the result of arm's-length bargaining.

10

Based upon their extensive experience in wage and hour collective and class actions, Plaintiffs' counsel believe that on inspection, this Court will join them in concluding that the proposed Settlement Agreement is fair, reasonable and worthy of approval. It bears all the indicia of fairness warranting approval as set forth in *Lynn's Foods* because Plaintiffs and Class Members were represented by experienced counsel, who, in the "adversarial context of a lawsuit" engaged in "serious, informed, arms-length negotiations" of "a *bona fide* dispute with respect to liability [and] amounts due under the Act," resulting in a fair, and reasonable compromise of claims in settlement. *See Lynn's Foods,* 679 F.2d at 1353-54.   Here, the Plaintiffs are each receiving on average, nearly $2000.00 in compensation without having to prove anything to a jury, and based solely upon their alleged estimations of unpaid work hours. Each Plaintiff likewise is receiving a pro rata share based upon the hours each alleged and taking into consideration the actual payroll records, including weeks where they did not work even 40 hours, as well as considering work weeks beyond the two-year statute of limitations.

### C.  The Complexity, Expense and Duration of Litigation

 The complexity, expense, and length of future litigation also militate in favor of this settlement. This case was filed in July 2020, and settlement was preceded by three months of informal discovery pursuant to the FLSA scheduling order.  During the pendency of the case, the Parties exchanged payroll records, personnel files, time records, completed Court in Interrogatories, and other company records related to whether Plaintiffs were owed any overtime hours. Plaintiffs' counsel conducted extensive interviews of Plaintiffs, and analyzed and assessed all the payroll records, time records and other company documents. This matter was resolved only after extensive research and analysis and arms-length negotiations in a mediation setting.

Further, if the Parties continued to litigate this matter, they would be forced to engage in costly and protracted discovery and litigation, go through the conditional certification motion process, summary judgment briefings and potentially to only then after the close of a long discovery period, deal with motion for decertification.  This case is very fact intensive and would have involved jury trial on questions of fact and damages in order to present the claims and defenses.  To prove their claims or defenses, the Parties would incur extensive costs involving depositions from persons at office locations from across the U.S., potentially involve forensic computer analysis and costly ESI discovery, and could thereafter involve millions of files and records and pages of time records, computer log records, time sheets, emails, and telephone records along with emails to assess the claims and hours alleged to have been worked. Therefore, this settlement is a reasonable means for both Parties to minimize future risks and litigation costs, and could likely cause each side to incur attorney's fees and costs upwards of $1,000,000.00 by the time the case proceeded to trial. Additionally, after careful review of the records and discussions with counsel, the Plaintiffs believe they are receiving a fair and reasonable amount of wages and do not wish to continue with costly, risky litigation which may not result in the recovery of any more additional sums or even de minimis increase from what the parties agreed upon. Moreover, Plaintiffs also carried the risk of having to pay Defendant's cost and expenses if they did not prevail, risks they were seeking to mitigate against and to naturally and logically avoid from being exposed to as the litigation costs would be steadily increasing with depositions yet to come.

### D.  The Stage Of Proceedings At Which The Settlement Was Achieved.

The Parties reached settlement after three months of investigation and discovery in the course of litigation. Counsel for the Parties spent significant time and effort advocating legal

theories, exchanging discovery and modeling the potential damages at issue in this case. The Parties exchanged documents, damage calculations, compensation information, and engaged in detailed evaluation of MLS compensation practices for Plaintiffs.  Courts favor early settlement, as long as the settlement is not so early that a party does not have sufficient information with which to negotiate. See *Lipuma v. Am. Express Co., 406 F. Supp. 2d 1298, 1324-25 (S.D. Fla. 2005)*.

There has been sufficient investigation and exchange of information to allow counsel and the Court to act intelligently in this matter, again substantially enhanced by the benefits of the FLSA scheduling order and exchange of records. Moreover, Plaintiffs all signed declarations of their experiences of suffering to work without being paid a premium for all overtime hours worked. The Parties exchanged records, information, data and representations regarding the claims and defenses in this matter. In agreeing upon the proposed settlement, the Parties had sufficient information and conducted an adequate investigation to allow them to make an educated and informed analysis and conclusion.

### E.  The Likelihood of Success at Trial.

Defendant would have had the opportunity after the close of discovery to file for decertification, assuming the Court granted conditional certification. Thus, even getting to trial for the Plaintiffs would be a question and a gamble.  Plaintiffs' claims of unpaid lunches related to automatic deductions were taken into consideration as part of this settlement, such that as alleged Plaintiffs are fully compensated for these alleged unpaid overtime wages. Having to prove other off the clock work would be a complex and difficult task given that Defendant does have time sheets and contends it complied with the record keeping requirements of the FLSA and its regulations.

The Plaintiffs would face significant obstacles and risk an unsuccessful outcome if this case were to proceed to trial. First, Plaintiffs would face a risk at trial of not prevailing on their wage claims because they would have had to establish that they in fact worked off-the-clock or that hours were edited or redacted. At trial, MLS would have claimed (i) MLS has an express policy forbidding employees from working off-the-clock; (ii) MLS implemented safeguards to prevent employees from working off-the-clock and that their time records were accurate; and (iii) MLS enacted and enforced policies sufficient to show that it acted in both objective and subjective good faith such that a two-year statute of limitations should apply and that liquidated damages are not appropriate in this instance.

If the case were tried, the jury would have been presented with a case where MLS would have argued that it maintained compliance with the FLSA, and Plaintiffs would bear the burden of proving that they worked off-the-clock with MLS's knowledge and/or tacit permission of management.

Second, Plaintiffs would have had to establish the number of hours they worked off-the-clock or which were edited or redacted. Moreover, for many plaintiffs and workweeks, the overtime hours would have fallen into gap time which would not be recoverable. Thus, in the damage analysis conducted by Plaintiffs' counsel, each Plaintiff is credited with being paid respective hours of unpaid overtime wages during weeks they worked a full 40 hour during the relevant three-year period and as per the hours for which they alleged to individually not have been paid. If the case were tried, MLS would have the opportunity to establish that the number of hours worked per week was less than the Plaintiff's approximated hours, which could have substantially

reduced Plaintiffs' damages.  Furthermore, if Defendant prevailed on its good faith defense, liquidated damages would not be awarded, and similarly, all wages older than two years would be time barred.

Despite diligent investigation and research, it remains a highly uncertain question of fact as the actual overtime hours each Plaintiff worked off-the-clock, and whether or not a two or three-year statute of limitations is applicable and whether or not liquidated damages are appropriate in this matter. In consideration of the close factual issues raised, and the significant costs of litigation required to build a litigation record sufficient to prove the claims or defenses, the Parties reasonably chose to compromise the bona fide dispute.  Poliner sought a compromise of the claims, and when such an opportunity arose, he chose to pursue resolution and compromise for himself and all other plaintiffs he agreed to represent in this action. It would seem to be illogical to force a plaintiff to risk all the way to trial, gambling on whether a jury would agree with him and the other plaintiffs on their alleged unpaid work hours, while meanwhile carrying the risk of having to pay Defendant, thousands of dollars in costs and expenses if they did not prevail on their claims.

F. **The range of recovery**:

There is in this case, like most disputed claims and lawsuits, the possibility that Plaintiffs would recover $0, and worse have to pay many thousands of dollars in litigation costs. Ultimately, the Parties agreed to an amount of $25,00.00 representing a reasonable compromise.

Although Plaintiffs here as in every wage case believe that they have alleged sufficient facts to demonstrate violations of the FLSA and Florida law on a collective action basis, the Plaintiffs are nevertheless cognizant of the legal and factual difficulties they face in this litigation.

For example, there is no doubt that continued litigation and trial would be costly, arduous and complex. This settlement, on the other hand, makes monetary relief available to the Plaintiffs for violations which occurred years ago in a prompt and efficient manner.  Importantly, the Plaintiffs' damages are not increasing as the litigation continues.  The majority of employees for MLS are transient people working short periods of time, and due to the COVID-19 and layoffs, very few current employees would have been impacted by this case.

Should a collective and/or class action be certified, it may be difficult to locate additional class members given the transient nature of the plaintiffs' jobs and the length of time that has passed since many worked for the Defendant. Similarly, if MLS demonstrates that it acted in good faith, it will not owe liquidated damages equal to the backpay to which Plaintiffs are entitled. In addition, as noted above, if MLS's violations are not found to be willful, Plaintiffs are entitled only to a two-year statute of limitations under the FLSA; accordingly, certain opt-in Plaintiffs would no longer be eligible to assert FLSA claims and be time barred in whole or in part.  When Plaintiffs presented their damages analysis, offsetting all the disputed workweeks and the records which negate some of the alleged unpaid work hours of Plaintiffs claimed, the damages recoverable would for some be de minimis, and for others, not significantly more than each is recovering pro rata by this settlement to warrant the risks and costs of trial and protracted litigation. It is well known that in FLSA collective actions, many opt in plaintiffs opt out, when faced with having to be subjected to discovery and deposition or appear at trial. Here, due to the transient nature of the plaintiffs, there was concern that many would either seek to opt out or relocate and not be reachable.

G.  **The opinions of counsel**:

The opinion of experienced counsel should be afforded substantial consideration by the Court. See, e.g., *Holmes v. Cont'l Can. Co.*, 706 F.2d 1144, 1149 (11th Cir. 1983); *Pettway v. Am. Cast Iron Pipe Co.*, 576 F.2d 1157, 1215 (5th Cir. 1978) ("The trial court is entitled to take account of the judgment of experienced counsel for the parties" in assessing the fairness of a proposed settlement). Here, counsel for both parties have weighed the respective risks in proceeding with the litigation and have extensively analyzed MLS's potential liability based on damage calculations prepared by Plaintiffs using MLS own timekeeping records and assuming that Plaintiffs were not paid for any overtime hours at all, which may not prove to be the case should the Parties proceed with discovery.  Based on their experience, counsel for both parties here jointly represent to the Court that they believe that this settlement is fair, reasonable, and adequate.

H.  **Plaintiffs' Counsel Should Be Awarded Attorneys' Fees and Costs In the Amount Agreed Pursuant to the Settlement Agreements.**

The last element the Court should evaluate in determining fairness of the settlement is the reasonableness of the proposed attorney's fees. *See Helms v. Central Fla. Reg. Hosp.*, 2006 U.S. Dist. LEXIS 92994, at *6-7, (M.D. Fla. Dec. 21, 2006); *Strong v. BellSouth Telecoms., Inc.*, 137 F.3d 844, 849-50 (5th Cir. 1998). Provided "the plaintiff's attorneys' fee is agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of the fees paid to his attorney, the Court [should] approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel." *Bonetti v. Embarq Mgmt. Co.*, 2009 WL 2371407, at *3-4 (M.D. Fla. Aug. 4, 2009).

In this case, the Settlement Agreement provides for the Defendants to pay Plaintiffs' Counsel attorneys' fees and costs as part of the resolution of Plaintiffs' claims in the amount of $27,900.00 in fees and costs, but does not include the mediator costs and charges advanced by Plaintiff's counsel in the sum of $2446.25. Plaintiffs' attorneys' fees and costs to be paid by the Defendant were separately negotiated from the sums agreed to be paid for the wage claims of each Plaintiffs. Moreover, Plaintiffs' attorneys incurred substantially higher sums in fees, (lodestars) and through negotiations with Defendant's attorneys, the Parties reached a compromise as to the sum of attorneys' fees and costs to be paid by the Defendant without regard to the amount paid to Plaintiffs.  The Parties stipulate that the quantum of attorneys' fees and costs is fair and reasonable under the circumstances. Over the past three months of litigation, and in a month or more preceding the filing of this lawsuit, Plaintiffs' counsel spent a significant amount of time in the case preparing this case, the pleadings, reviewing documents, preparing damages models, analyzing records, researching applicable issues, speaking with witnesses and working with upwards of 13 clients, and then engaging in discovery and exchange of records, along with preparing for and attending a full day mediation before experienced employment law mediator Allen Blain. Further, at every step of the litigation, Plaintiffs' counsel was required to communicate with the 13 Plaintiffs, and many other witnesses.  Additionally, Plaintiff's counsel spent many hours poring over and analyzing emails, time records, payroll records and various other documents and files and building damages models and preparing a mediation presentation based upon the analysis of the records. The review required Plaintiffs' counsel to reconcile all of these records and create a damage model on a week by workweek basis, which was a monumental undertaking. The resulting settlement

fully compensates an amount for each eligible workweek alleged to be underpaid, and an amount for each Plaintiff for unpaid wages due and owing to them as well as an equal amount of liquidated damages, as reflected in those records.

Plaintiffs' counsel spent substantially more hours than the attorneys' fees reflect litigating this matter from inception through filing the Joint Motion for Approval of Settlement. During mediation, the Parties separately negotiated attorneys' fees and costs without regard to the amount owed to Plaintiffs. Ultimately, the Parties agreed to the payment of $27,900.00 in attorneys' fees and costs. Based upon Plaintiffs' counsel's hourly rates as awarded in other FLSA actions of at least $400.00 per hour, and the number of hours spent litigating this matter, the payment of attorneys' fees and costs of $27,900.00 is fair and reasonable under the circumstances, and is just $2146.15 per Plaintiff.  Further, the fact that Plaintiffs' counsel agreed to a reduced attorneys' fee provision demonstrates that no conflict of interest adversely affected the Plaintiffs' recovery under the Settlement Agreements.

Further Plaintiffs' counsel's attorneys' fees and costs are reasonable in light of the fact that the total of $25,000.00 for wages in settlement of Plaintiffs' claims were obtained in spite of Defendant's various pled defenses and contentions, including that Plaintiffs' did not work off-the-clock, that Plaintiffs were paid for all hours worked and that the records disputed their claims.

This settlement was achieved only by and through Plaintiffs' counsel's ability to persuade MLS that Plaintiffs' claims had merit and that Defendants faced the very real risks of having to pay more than this sum in wages, as well as incurring attorney's fees which would very soon eclipse the amount of the entire settlement if they continued to litigate.  This case settled after three

19

months of litigation, but still was near the point that Plaintiffs' counsel was prepared to commence with the filing of a Motion for Conditional Certification, which if granted could have changed the entire scope of this action and moved this case into a two-year, protracted and costly battle.  As per the above cited authority it is appropriate that Plaintiffs' counsel be fairly and reasonably compensated for performing these necessary legal services.  Defendant's counsel stipulates that the quantum of attorneys' fees and costs agreed to be paid represents a fair and reasonable compromise of Plaintiff's incurred lodestar attorney's fees, and Plaintiffs' counsel has also agreed to accept the reduced amount of attorneys' fees from their respective lodestars for the purpose of ending this litigation and obtaining a settlement as Plaintiff Poliner desired to resolve in lieu of the continued risks of trial, including the risks of having to pay the Defendant's litigation costs.

All of the above factors warrant that the $27,900.00 stipulated to be paid to Plaintiffs' counsel for reimbursement of incurred attorneys' fees and costs by Defendant are fair and reasonable under all the facts and circumstances and should be approved.  Further, as the attorney's fees were separately negotiated throughout the mediation from the amount or sum Defendant agreed to pay the Plaintiffs for wages, the amount to be paid for attorney's fees does not and did not impact or affect the amount of money to be paid to the Plaintiffs for their wage claims.  See *Bonetti v. Embarq Mgmt. Co.*, 2009 WL 2371407, at *3-4 (M.D. Fla. Aug. 4, 2009).  "[P]ersuasive district court authority has deemed scrutiny of the reasonableness of plaintiff's agreed-upon attorney's fees to be unnecessary in an FLSA settlement where 'the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff,' except in circumstances where 'the settlement does not appear reasonable on its face or there is [*16] reason

to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney.'" *Id.* (quoting *Crabtree v. Volkert, Inc.*, 2013 U.S. Dist. LEXIS 20543, 2013 WL 593500, at *7 n. 4 (S.D. Ala. Feb. 14, 2013) quoting in turn *Bonetti v. Embarq Management Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009)). *Buchanan v. Bahama Bob's Beachside Cafe, Inc.*, No. 16-0490-KD-N, 2017 U.S. Dist. LEXIS 50917, at *15-16 (S.D. Ala. Apr. 3, 2017)

## CONCLUSION AND PRAYER FOR APPROVAL

The Parties voluntarily agreed to the terms of their settlement reached at arm's length discussions during a mediation. All Parties were counseled and represented by their respective experienced attorneys throughout the litigation and settlement process. Accordingly, the Parties jointly and respectfully request that this honorable Court approve the terms of the Settlement Agreement, enter a stipulated judgment in favor of the Plaintiffs in the amounts agreed upon, reserve jurisdiction to enforce the terms of this FLSA settlement agreement, and then dismiss this case with prejudice upon compliance by Defendant with the payment of the sums agreed upon.

Respectfully Submitted this 8th day of December 2020

**FELDMAN LEGAL GROUP**

**BENESCH FRIEDLANDER COPLAN & ARANOFF LLP**

s/*Mitchell Feldman*
Mitchell Feldman, Esq.
Florida Bar No. 0080349
mlf@feldmanlegal.us
Florida Bar No. 0068573
6940 W. Linebaugh Ave #101
Tampa, Florida 33625
Telephone: (813) 639-9366

s/*Adam Primm*
Adam Primm, Esq.
Partner
Labor & Employment
Benesch Friedlander Coplan & Aronoff LLP
200 Public Square, Suite 2300
Cleveland, OH 44114-2378

21

Facsimile: (813) 639 -9376
**Attorney for Plaintiffs**

Ph:216.363.4451Fax:216.363.4588Email:a
primm@beneschlaw.com
**Attorneys for Defendant**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of December, 2020 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send an e-mail notification of such filing to counsel of record for all parties.

*/s/ Mitchell Feldman*
Mitchell Feldman, Esq.
Florida Bar No. 0080349