## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is entered into between Managed Labor Solutions, LLC ("MLS"), on the one hand; and Plaintiff Shawn Poliner, individually and on behalf of opt-in Plaintiffs Godfrey Mania, Jerry Hooks, James Watson, Amy Pigg, Rachel Sanchez, Angel Vanderhorst, Samantha Hartel, Katisha Slaughter, Julian Matthias, Joshua Riley, Cameron Bledsoe, and Latoya McCrea (collectively, "Plaintiffs"). MLS and Plaintiffs are referred to as the "Settling Parties."

**WHEREAS**, on July 1, 2020, Plaintiff Poliner filed a civil action, captioned *Shawn Poliner v. Managed Labor Solutions, LLC*, in the Middle District of Florida, case number 3:20-CV-00738-TJC-PDB (the "Litigation") alleging failure to pay overtime compensation under the Fair Labor Standards Act ("FLSA").

**WHEREAS**, 12 current and former drivers and transporters of MLS consented to join the Litigation and filed consents to join as Plaintiffs, and in so doing consented to Plaintiff Poliner negotiating and making binding decisions on their behalf as to settlement as per their Consent to Join Forms.

**WHEREAS**, MLS (and the Released Parties) denied and continue to deny any claim regarding the alleged failure to pay overtime Plaintiffs or any drivers or transporters. Per MLS, all employees are properly paid minimum and overtime wages for all time worked.

**WHEREAS**, a good-faith dispute as to whether any amounts for unpaid overtime wages are owed.

**WHEREAS**, despite this fundamental disagreement, and solely to avoid the costs (both economic and opportunity) of litigation, and to settle and dispose of, fully and completely, the

13982024 v1

claims released here, MLS entered into this Agreement. Settling Parties agree and acknowledge that no violation of law has been established or proven. Neither the fact of this Agreement nor any term of this Agreement may be used as any indication of fault or admission, or introduced as evidence in any proceeding (other than in this Litigation).

**NOW THEREFORE**, Settling Parties agree to take all measures reasonably necessary and appropriate to obtain approval of this Agreement in consideration for: (a) payment by MLS of the consideration expressed in this Agreement subject to the terms, conditions and limitations of this Agreement; (b) the release and dismissal with prejudice of all claims as set forth in this Agreement; and (c) other valuable monetary and non-monetary consideration as set forth in this Agreement. This Agreement is contingent upon approval by the Court and is entered into voluntarily by the Settling Parties for settlement purposes only.

## I.     <u>SETTLEMENT APPROVAL PROCEDURE</u>

Counsel for Plaintiffs ("Plaintiffs' Counsel") shall use their best efforts to, by December 11, 2020, file the Joint Motion for Final Approval of Settlement ("Consent Motion") with the Settlement Agreement and the agreed-to (proposed) Order on Joint Motion ("Approval Order"). The Court's entering the proposed Approval Order shall be referred to as the "Final Approval Order." In the event the Court does not promptly issue the Final Approval Order, the Settling Parties will set the Consent Motion for a hearing on the Court's motion calendar, on a date convenient to the Settling Parties and the Court. The Settling Parties agree to hold in abeyance all proceedings in the Litigation, except as may be necessary to implement this Agreement.

13982024 v1

## II.    CONSIDERATION AND PAYMENT

**A.    Consideration.** In consideration for the execution of this Settlement Agreement, and for Plaintiffs' agreement to the Release of Claims and dismissal with prejudice of the Litigation, subject to Court approval, MLS agrees to pay to Plaintiffs and Plaintiffs' Counsel Fifty-Two Thousand Nine Hundred Dollars ($52,900) (the "Total Settlement Amount") as follows:

1.    Plaintiffs. In consideration for the dismissal with prejudice of the Litigation as well as the release of claims effected by this Agreement and other good and valuable consideration, MLS shall pay Plaintiffs Twenty-Five Thousand Dollars ($25,000.00) less the sum of Two Thousand Four Hundred Forty-Six Dollars and Twenty-Five Cents ($2,446.25) for reimbursement to their counsel for advancement of their share of the mediation costs for a total of Twenty-Two Thousand Five Hundred Fifty-Three Dollars and Seventy-Five Cents ($22,553.75) (the "Gross Payment Amount") for alleged unpaid overtime wages subject to authorized or required deductions, including employee-paid payroll tax withholdings required by law, garnishments, child support orders, and/or tax liens. Defendant shall issue payments to the Plaintiffs according to the allocation attached hereto as Appendix A, with exactly half of the allocated Gross Payment Amount to be paid to each plaintiff subject to FICA and standard W-2 withholdings representing payment of wages owed, and half of the allocated Gross Payment Amount to be paid as liquidated damages without withholdings or deductions, for which Defendant shall issue a 1099 to each.

2.    Attorneys' Fees and Costs Amounts. MLS shall pay Plaintiffs' Counsel Twenty-Seven Thousand Nine Hundred ($27,900) plus mediation costs of Two Thousand Four Hundred Forty-Six Dollars and Twenty-Five Cents ($2,446.25) (collectively, $30,346.25) for

13982024 v1

attorneys' fees, costs, and expenses incurred in this Litigation ("Plaintiffs' Counsel's Fees and Costs"). The Parties represent that they separately negotiated a compromise in the amount of attorneys' fees incurred by Plaintiffs, after agreeing upon a sum to be paid to Plaintiffs for claimed overtime wages, and that this compromise represents payment of Plaintiffs' Counsel's Fees and Costs incurred, sought, and claimed by them associated with the prosecution of the claims in this Litigation from Plaintiffs' Counsel's stated lodestar calculation. The amount approved by the Court for payment of Plaintiffs' Counsel's Fees and Costs will be reported as income on an IRS Form 1099 to Plaintiffs' counsel.

Plaintiffs' Counsel shall either submit an unopposed motion to approve this settlement including the payment of Plaintiffs' Counsel's Fees and Costs, or the parties will submit a joint motion to approve. MLS will not oppose the award of an attorney fee in this amount or seek approval of a lesser amount. The settlement is not conditioned upon the Court's approval of Plaintiffs' Counsel's petition for fees, costs, and litigation expenses. Payment of such attorneys' fees, expenses, and costs to Plaintiffs' Counsel shall be made in accordance with this Agreement and shall constitute full satisfaction of any and all obligations by MLS or any Released Party (defined below) to pay any person, attorney or law firm for attorneys' fees, expenses or costs incurred on behalf of Plaintiffs

3.    <u>Timing of Payments</u>. Within fourteen (14) days after the Final Approval Order becoming a final non-appealable order, MLS will make the payments to the Plaintiffs according to appendix A, and as set forth in paragraph 1, contingent upon execution of the individual Release Agreements attached in Appendix B. Additionally, Defendant shall pay the Plaintiffs' Counsel's Fees and Costs to Feldman Legal Group within seven (7) days of the Court's

Final Approval Order becoming a final non-appealable order via bank wire to as per the wiring instructions to be provided by Plaintiff's counsel.

4.    Taxes. No provision of this Agreement shall be deemed tax advice, and no provision in this Agreement shall guarantee any tax result concerning any payment made under this Agreement. Other than tax withholdings by MLS, Plaintiffs are responsible for any and all taxes associated with any payment made under this Agreement, and agree to indemnify and hold MLS harmless for any tax due or owing by them.

5.    No Effect on Benefit Plans. Payments to Plaintiffs shall not create any credit or any basis to change the calculation of benefits provided under any pension, retirement, or any other benefit or compensation plan, policy, program, or arrangement. Such payments shall not modify any previously credited hours or service under any employee benefit plan, policy, or bonus program sponsored by MLS, and shall not be applied as salary, earnings, wages, or any other form of compensation for purposes of such plans, policies, or programs.

## III.    **RELEASE**

Conditioned upon the entry of the Final Approval Order, and in exchange for the monetary consideration recited in this Agreement, Plaintiffs do hereby agree to dismiss the Litigation with prejudice and execute this Agreement which includes an agreement to release MLS (defined above) as well as each of its and their present and former owners, stockholders, predecessors, successors, joint ventures, affiliates (including, without limitation, Horizon Facilities Services, Inc.), assigns, agents, directors, officers, board members, employees, representatives, insurers, attorneys, parents, subsidiaries, benefit plans, plan fiduciaries, affiliated divisions and companies, and all persons acting by, through, under, or in concert with any of them (each a "Released Party"

13982024 v1

and collectively the "Released Parties") from any and all claims (whether under state or federal law) related to their alleged failure to pay overtime, or any similar or related facts, which were or could have been asserted in this Litigation, including (without limitation) claims for overtime pay, minimum wages, non-payment of wages, misclassification, meal or rest periods, paid and unpaid time off, waiting time penalties, unfair business practices, and any other pay practices of any kind that accrued during their employment as drivers and transporters for MLS, relating back to the full extent of any applicable federal statute of limitations and continuing through the date of the filing of the complaint, including, without limitation, all state and federal claims for unpaid wages, and any and all related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

**IV.**    **COMMUNICATION**

Plaintiffs' Counsel will not for any reason, without limitation, make any press statement or release, and/or any statement published on the internet or in social media regarding the terms or subject of this Agreement.

**V.**    **NOTICES**

All notices, requests, demands and other communications required or permitted to be given pursuant to this Agreement shall be in writing and shall be delivered personally, by e-mail, or mailed, postage prepaid, by First Class U.S. Mail to the undersigned persons at their respective addresses as set forth herein:

Counsel for Plaintiffs:              Mitch Feldman
                                     Feldman Legal Group
                                     6940 West Linebaugh Ave., Suite 101
                                     Tampa, FL 33625
                                     Tel: (813) 639-9366
                                     mlf@feldmanlegal.us

Counsel for MLS:                          Adam E. Primm
                                          Benesch, Friedlander, Coplan & Aronoff
                                          200 Public Square, Suite 2300
                                          Cleveland, OH 44114
                                          Tel: (216) 363-4451
                                          aprimm@beneschlaw.com

## VI.     **REPRESENTATION BY COUNSEL**

All of the Settling Parties acknowledge that they have been represented by counsel throughout all negotiations that preceded the execution of this Agreement and that this Agreement has been executed with the consent and advice of counsel.

## VII.    **NO ADMISSION OF LIABILITY**

MLS enters into this Agreement to avoid further expense and disruption to its business. The Settling Parties acknowledge and agree that liability for the actions that are the subject matter of this Agreement and the amount of any damages if liability were to be established are disputed by MLS. No violation of any law has been proven or established. This Agreement and the settlement are a compromise and shall not be construed as an admission of liability at any time or for any purpose, under any circumstances, by the Settling Parties to this Agreement. The Settling Parties further acknowledge and agree that this Agreement and the settlement shall not be used to suggest an admission of liability in any dispute the Settling Parties may have now or in the future with respect to any person or entity. Neither this Agreement nor anything herein, nor any part of the negotiations had in connection herewith, shall constitute evidence with respect to any issue or dispute other than for purposes of enforcing this Agreement.

13982024 v1

**VIII.   MODIFICATION OF AGREEMENT**

This Agreement may not be modified or amended except in writing, signed by the affected Settling Parties or the respective counsel of record for the Settling Parties and as approved by the Court.

**IX.     CONSTRUCTION AND INTERPRETATION**

**A.     Entire Agreement**

This Agreement constitutes the entire agreement between and among the Settling Parties with respect to the subject matter contained herein and shall supersede all prior and contemporaneous negotiations between the parties. This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement, or any specific term or condition thereof. Plaintiffs and MLS participated in the negotiation and drafting of this Agreement and had available to them the advice and assistance of independent counsel. As such, neither Plaintiffs nor MLS may claim that any ambiguity in this Agreement should be construed against the other.

**B.     No Reliance on Representations or Extrinsic Evidence**

Except as expressly provided herein, this Agreement has not been executed in reliance upon any other oral or written representations or terms, and no such extrinsic oral or written representations or terms shall modify, vary or contradict its terms. In entering into this Agreement, the Settling Parties agree that this Agreement is to be construed according to its terms and may not be varied or contradicted by extrinsic evidence.

**C.     Controlling Law**

13982024 v1

Except as set forth herein, this Agreement shall be subject to, governed by, construed, enforced and administered in accordance with the laws of the State of Florida, both in its procedural and substantive aspects, and without regard for the principle of conflict of laws, other than to the extent that the laws of the United States governs any matter set forth herein, to which federal law shall govern.

**D.      No Assignment**

Plaintiffs' Counsel and Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**E.      Severability**

This Agreement is meant to resolve finally and fully the claims between and among MLS and Plaintiffs. If any provision of this Agreement is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, except the Release and requirement for Court approval, the remaining portions of this Agreement will remain in full force and effect to the extent that the effect of the Agreement remains materially the same and the obligations of the Settling Parties remain materially the same.

**X.      COUNTERPARTS**

This Agreement, any amendments or modifications to it, and any other documents required or contemplated to be executed in order to consummate this Agreement, may be executed in one or more counterparts, each of which shall be deemed an original of this Agreement. All counterparts of any such document together shall constitute one and the same instrument. A

13982024 v1

photocopy, facsimile, or digital image of an executed counterpart shall be enforceable and admissible as an original.

## XI.   BINDING EFFECT

This Agreement is binding upon and shall inure to the benefit of the Settling Parties to this Agreement. Without limiting the foregoing, this Agreement specifically shall inure to the benefit of all Released Parties. Also without limiting the foregoing, this Agreement shall be binding upon the spouses, children, heirs, assigns, agents, administrators, executors, beneficiaries, conservators, successors and offspring of all Plaintiffs. Following Approval and entry of a non-appealable Final Approval Order, this Agreement may be pleaded as a full and complete defense to any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of or contrary to this Agreement.

## XII.   ATTORNEY FEES, COSTS AND EXPENSES

Except as otherwise specifically provided herein, the Settling Parties shall bear responsibility for their own attorneys' fees, costs and expenses, taxable or otherwise, incurred by them or arising out of or related to this Litigation, or the negotiation of this Settlement, and shall not seek reimbursement thereof from any party to this Agreement. However, in the event of any dispute to enforce the terms of this Agreement, the prevailing party shall be entitled to an award of their reasonable attorneys' fees and costs from the non-prevailing party.

## XIII.   AUTHORITY OF COUNSEL

### A.   Facsimile, Electronic and E-mail Signatures

Any Settling Party may execute this Agreement by signing or by causing its counsel to sign on the designated signature block below, including by electronic means, and transmitting that

13982024 v1

signature page via facsimile, e-mail or other electronic means to counsel for the other Settling Party. Any signature made and transmitted by facsimile, e-mail or other electronic means for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the Settling Party whose counsel transmits the signature page by facsimile, e-mail or other electronic means.

### B.    Voluntary Signature

All Settling Parties agree that they have signed this Agreement, or authorized their counsel to sign this Agreement on their behalf, knowingly, voluntarily, with full knowledge of its significance, and without coercion.

### C.    Warranty of Counsel

Plaintiffs' Counsel warrant and represent that they are expressly authorized by Plaintiffs to take all appropriate action required or permitted to be taken pursuant to this Agreement in order to effectuate its terms. Counsel for MLS warrant and represent that they are authorized to take all appropriate action required or permitted to be taken by MLS pursuant to this Agreement in order to effectuate its terms.

## XIV.  CONTINUING JURISDICTION

This Agreement is subject to the continuing jurisdiction of the Court to retain continuing jurisdiction to construe, interpret and enforce the provisions of this Agreement; to supervise the administration and distribution of the resulting settlement funds; and to hear and adjudicate any dispute or litigation arising from or related to this Agreement or the issues of law and facts asserted in the Litigation.

XV.    **EFFECT OF NON-APPROVAL**

In the event that the Agreement is not approved by the Court for any reason in the form submitted by the Settling Parties, the Settling Parties will attempt to address any concerns raised by the Court and resubmit a revised settlement agreement if possible. If the Settling Parties cannot agree on a revised settlement agreement or if the Court denies the approval of a renegotiated settlement agreement, this Agreement or the renegotiated agreement shall be terminated as of the date the Court's order denying approval of the Agreement or renegotiated agreement was entered. Upon termination of this Agreement or any renegotiated agreement: (A) this Agreement and, if applicable, the renegotiated agreement shall have no force or effect and no Settling Party shall be bound by any of its terms, and any documents executed or filed in connection with this Agreement shall be inadmissible in evidence and shall have no preclusive or other effect; (B) MLS shall retain the right to contest whether the case should be maintained as a class or collective action, and to contest the merits of the claims being asserted in the case; and (C) nothing in this Agreement shall be used or construed by or against any party as a determination, admission, or concession of any issue of law or fact in the Litigation; and the Settling Parties do not waive, and instead expressly reserve, their respective rights with respect to the prosecution and defense of the Litigation.

**[SIGNATURES APPEAR ON FOLLOWING PAGE]**

13982024 v1

| DATED: 12/7/20 | For Managed Labor Solutions, LLC:<br><br>By: |
| DATED: 12/1/20 | Shawn Poliner<br><br>*Shawn Poliner*<br>By: Shawn Poliner (Dec 1, 2020 15:24 EST) |

13982024 v1

# APPENDIX

# A

| Poliner v. Managed Labor Solutions; 3:20-cv-00738-TJC-PDB | | |
|---|---|---|
| | | |
| Gross FLSA Settlement | $25,000.00 | |
| Less Mediator Fees | -$2,446.25 | |
| Net FLSA Settlement | $22,553.75 | |
| | | |
| | | |
| Plaintiff | Pro Rata % | Pro Rata Share of Net Settlement |
| **Shawn Poliner** | 0.1335886361 | $3,012.92 |
| Godfrey Maina | 0.00166985795 | $37.66 |
| Samantha Hartel | 0.03172730106 | $715.57 |
| Katisha Slaughter | 0.00100191477 | $22.60 |
| James Watson | 0.08883644298 | $2,003.59 |
| Julian Matthias | 0.02226477268 | $502.15 |
| Angel Vanderhorst | 0.2203099256 | $4,968.81 |
| Jerry Hooks | 0.02003829541 | $451.94 |
| Rachel  Sanchez | 0.0340651022 | $768.30 |
| Amy Pigg | 0.07380772142 | $1,664.64 |
| Cameron McKown-Bledsoe | 0.1773166496 | $3,999.16 |
| LaToya McCrea | 0.101861335 | $2,297.36 |
| Joshua David Riley | 0.09351204524 | $2,109.05 |
| Totals | 1 | $22,553.75 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

# APPENDIX

# B

## SETTLEMENT AGREEMENT AND RELEASE

1.      I, LaToya McCrea, opted into this litigation, captioned *Shawn Poliner v. Managed Labor Solutions, LLC*, in the Middle District of Florida, case number 3:20-CV-00738-TJC-PDB (the "Litigation") alleging failure to pay overtime compensation under the Fair Labor Standards Act ("FLSA").

2.      I authorized Plaintiff Shawn Poliner ("Plaintiff") and his attorney to make decisions on my behalf related to the Litigation.

3.      Plaintiff and Managed Labor Solutions, LLC ("MLS") have reached a settlement agreement, to be presented to the Court for approval.

4.      As part of the settlement, following Court approval, I will receive the gross amount of $2,297.36 in exchange for my execution of this Release. I consent to this settlement.

5.      Conditioned upon the entry of the Final Approval Order, and in exchange for the consideration listed in Section 4, I do hereby agree to dismiss the Litigation with prejudice and execute this Agreement which includes an agreement to release MLS as well as each of its and their present and former owners, stockholders, predecessors, successors, joint ventures, affiliates (including, without limitation, Horizon Facilities Services, Inc.), assigns, agents, directors, officers, board members, employees, representatives, insurers, attorneys, parents, subsidiaries, benefit plans, plan fiduciaries, affiliated divisions and companies, and all persons acting by, through, under, or in concert with any of them (each a "Released Party" and collectively the "Released Parties") from any and all claims (whether under state or federal law) related to their alleged failure to pay overtime, or any similar or related facts, which were or could have been asserted in this Litigation, including (without limitation) claims for overtime pay, minimum wages, non-payment of wages, misclassification, meal or rest periods, paid and unpaid time off, waiting time penalties, unfair business practices, and any other pay practices of any kind that accrued during my employment as a driver and transporter for MLS, relating back to the full extent of any applicable federal statute of limitations and continuing through the date of the filing of the complaint, including, without limitation, all state and federal claims for unpaid wages, and any and all related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

Dated: _____11/23/2020_____    _____
                                      LaToya McCrea

## SETTLEMENT AGREEMENT AND RELEASE

1.      I, Samantha Hartel, opted into this litigation, captioned *Shawn Poliner v. Managed Labor Solutions, LLC*, in the Middle District of Florida, case number 3:20-CV-00738-TJC-PDB (the "Litigation") alleging failure to pay overtime compensation under the Fair Labor Standards Act ("FLSA").

2.      I authorized Plaintiff Shawn Poliner ("Plaintiff") and his attorney to make decisions on my behalf related to the Litigation.

3.      Plaintiff and Managed Labor Solutions, LLC ("MLS") have reached a settlement agreement, to be presented to the Court for approval.

4.      As part of the settlement, following Court approval, I will receive the gross amount of $715.57 in exchange for my execution of this Release. I consent to this settlement.

5.      Conditioned upon the entry of the Final Approval Order, and in exchange for the consideration listed in Section 4, I do hereby agree to dismiss the Litigation with prejudice and execute this Agreement which includes an agreement to release MLS as well as each of its and their present and former owners, stockholders, predecessors, successors, joint ventures, affiliates (including, without limitation, Horizon Facilities Services, Inc.), assigns, agents, directors, officers, board members, employees, representatives, insurers, attorneys, parents, subsidiaries, benefit plans, plan fiduciaries, affiliated divisions and companies, and all persons acting by, through, under, or in concert with any of them (each a "Released Party" and collectively the "Released Parties") from any and all claims (whether under state or federal law) related to their alleged failure to pay overtime, or any similar or related facts, which were or could have been asserted in this Litigation, including (without limitation) claims for overtime pay, minimum wages, non-payment of wages, misclassification, meal or rest periods, paid and unpaid time off, waiting time penalties, unfair business practices, and any other pay practices of any kind that accrued during my employment as a driver and transporter for MLS, relating back to the full extent of any applicable federal statute of limitations and continuing through the date of the filing of the complaint, including, without limitation, all state and federal claims for unpaid wages, and any and all related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

Dated: __11/30/20__

*Samantha Hartel*
Samantha Hartel (Nov 30, 2020 06:20 EST)

Samantha Hartel

**SETTLEMENT AGREEMENT AND RELEASE**

1.    I, Rachel Sanchez, opted into this litigation, captioned *Shawn Poliner v. Managed Labor Solutions, LLC*, in the Middle District of Florida, case number 3:20-CV-00738-TJC-PDB (the "Litigation") alleging failure to pay overtime compensation under the Fair Labor Standards Act ("FLSA").

2.    I authorized Plaintiff Shawn Poliner ("Plaintiff") and his attorney to make decisions on my behalf related to the Litigation.

3.    Plaintiff and Managed Labor Solutions, LLC ("MLS") have reached a settlement agreement, to be presented to the Court for approval.

4.    As part of the settlement, following Court approval, I will receive the gross amount of $768.30 in exchange for my execution of this Release. I consent to this settlement.

5.    Conditioned upon the entry of the Final Approval Order, and in exchange for the consideration listed in Section 4, I do hereby agree to dismiss the Litigation with prejudice and execute this Agreement which includes an agreement to release MLS as well as each of its and their present and former owners, stockholders, predecessors, successors, joint ventures, affiliates (including, without limitation, Horizon Facilities Services, Inc.), assigns, agents, directors, officers, board members, employees, representatives, insurers, attorneys, parents, subsidiaries, benefit plans, plan fiduciaries, affiliated divisions and companies, and all persons acting by, through, under, or in concert with any of them (each a "Released Party" and collectively the "Released Parties") from any and all claims (whether under state or federal law) related to their alleged failure to pay overtime, or any similar or related facts, which were or could have been asserted in this Litigation, including (without limitation) claims for overtime pay, minimum wages, non-payment of wages, misclassification, meal or rest periods, paid and unpaid time off, waiting time penalties, unfair business practices, and any other pay practices of any kind that accrued during my employment as a driver and transporter for MLS, relating back to the full extent of any applicable federal statute of limitations and continuing through the date of the filing of the complaint, including, without limitation, all state and federal claims for unpaid wages, and any and all related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

Dated: 11/24/2020

*Rachel Sanchez*
Rachel Sanchez (Nov 24, 2020 1:__ MST)

Rachel Sanchez

14001735 v1

## SETTLEMENT AGREEMENT AND RELEASE

1.      I, Cameron McKown-Bledsoe, opted into this litigation, captioned *Shawn Poliner v. Managed Labor Solutions, LLC*, in the Middle District of Florida, case number 3:20-CV-00738-TJC-PDB (the "Litigation") alleging failure to pay overtime compensation under the Fair Labor Standards Act ("FLSA").

2.      I authorized Plaintiff Shawn Poliner ("Plaintiff") and his attorney to make decisions on my behalf related to the Litigation.

3.      Plaintiff and Managed Labor Solutions, LLC ("MLS") have reached a settlement agreement, to be presented to the Court for approval.

4.      As part of the settlement, following Court approval, I will receive the gross amount of $3,999.16 in exchange for my execution of this Release. I consent to this settlement.

5.      Conditioned upon the entry of the Final Approval Order, and in exchange for the consideration listed in Section 4, I do hereby agree to dismiss the Litigation with prejudice and execute this Agreement which includes an agreement to release MLS as well as each of its and their present and former owners, stockholders, predecessors, successors, joint ventures, affiliates (including, without limitation, Horizon Facilities Services, Inc.), assigns, agents, directors, officers, board members, employees, representatives, insurers, attorneys, parents, subsidiaries, benefit plans, plan fiduciaries, affiliated divisions and companies, and all persons acting by, through, under, or in concert with any of them (each a "Released Party" and collectively the "Released Parties") from any and all claims (whether under state or federal law) related to their alleged failure to pay overtime, or any similar or related facts, which were or could have been asserted in this Litigation, including (without limitation) claims for overtime pay, minimum wages, non-payment of wages, misclassification, meal or rest periods, paid and unpaid time off, waiting time penalties, unfair business practices, and any other pay practices of any kind that accrued during my employment as a driver and transporter for MLS, relating back to the full extent of any applicable federal statute of limitations and continuing through the date of the filing of the complaint, including, without limitation, all state and federal claims for unpaid wages, and any and all related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

11/24/2020

Dated: _____      _____
                                                Cameron McKown-Bledsoe

## SETTLEMENT AGREEMENT AND RELEASE

1.    I, Katisha Slaughter, opted into this litigation, captioned *Shawn Poliner v. Managed Labor Solutions, LLC*, in the Middle District of Florida, case number 3:20-CV-00738-TJC-PDB (the "Litigation") alleging failure to pay overtime compensation under the Fair Labor Standards Act ("FLSA").

2.    I authorized Plaintiff Shawn Poliner ("Plaintiff") and his attorney to make decisions on my behalf related to the Litigation.

3.    Plaintiff and Managed Labor Solutions, LLC ("MLS") have reached a settlement agreement, to be presented to the Court for approval.

4.    As part of the settlement, following Court approval, I will receive the gross amount of $22.60 in exchange for my execution of this Release. I consent to this settlement.

5.    Conditioned upon the entry of the Final Approval Order, and in exchange for the consideration listed in Section 4, I do hereby agree to dismiss the Litigation with prejudice and execute this Agreement which includes an agreement to release MLS as well as each of its and their present and former owners, stockholders, predecessors, successors, joint ventures, affiliates (including, without limitation, Horizon Facilities Services, Inc.), assigns, agents, directors, officers, board members, employees, representatives, insurers, attorneys, parents, subsidiaries, benefit plans, plan fiduciaries, affiliated divisions and companies, and all persons acting by, through, under, or in concert with any of them (each a "Released Party" and collectively the "Released Parties") from any and all claims (whether under state or federal law) related to their alleged failure to pay overtime, or any similar or related facts, which were or could have been asserted in this Litigation, including (without limitation) claims for overtime pay, minimum wages, non-payment of wages, misclassification, meal or rest periods, paid and unpaid time off, waiting time penalties, unfair business practices, and any other pay practices of any kind that accrued during my employment as a driver and transporter for MLS, relating back to the full extent of any applicable federal statute of limitations and continuing through the date of the filing of the complaint, including, without limitation, all state and federal claims for unpaid wages, and any and all related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

Dated: 11/24/2020
_____

_Katisha Slaughter_
Katisha slaughter (Nov 24, 2020 13:41 EST)
_____
Katisha Slaughter

14001699 v1

## SETTLEMENT AGREEMENT AND RELEASE

1.      I, Julian Matthias, opted into this litigation, captioned *Shawn Poliner v. Managed Labor Solutions, LLC*, in the Middle District of Florida, case number 3:20-CV-00738-TJC-PDB (the "Litigation") alleging failure to pay overtime compensation under the Fair Labor Standards Act ("FLSA").

2.      I authorized Plaintiff Shawn Poliner ("Plaintiff") and his attorney to make decisions on my behalf related to the Litigation.

3.      Plaintiff and Managed Labor Solutions, LLC ("MLS") have reached a settlement agreement, to be presented to the Court for approval.

4.      As part of the settlement, following Court approval, I will receive the gross amount of $502.15 in exchange for my execution of this Release. I consent to this settlement.

5.      Conditioned upon the entry of the Final Approval Order, and in exchange for the consideration listed in Section 4, I do hereby agree to dismiss the Litigation with prejudice and execute this Agreement which includes an agreement to release MLS as well as each of its and their present and former owners, stockholders, predecessors, successors, joint ventures, affiliates (including, without limitation, Horizon Facilities Services, Inc.), assigns, agents, directors, officers, board members, employees, representatives, insurers, attorneys, parents, subsidiaries, benefit plans, plan fiduciaries, affiliated divisions and companies, and all persons acting by, through, under, or in concert with any of them (each a "Released Party" and collectively the "Released Parties") from any and all claims (whether under state or federal law) related to their alleged failure to pay overtime, or any similar or related facts, which were or could have been asserted in this Litigation, including (without limitation) claims for overtime pay, minimum wages, non-payment of wages, misclassification, meal or rest periods, paid and unpaid time off, waiting time penalties, unfair business practices, and any other pay practices of any kind that accrued during my employment as a driver and transporter for MLS, relating back to the full extent of any applicable federal statute of limitations and continuing through the date of the filing of the complaint, including, without limitation, all state and federal claims for unpaid wages, and any and all related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

Dated: 11/24/2020 _____

JULIAN A MATTHIAS (Nov 24, 2020 15:18 EST)

Julian Matthias

14001729 v1

## SETTLEMENT AGREEMENT AND RELEASE

1.     I, Angel Vanderhorst, opted into this litigation, captioned *Shawn Poliner v. Managed Labor Solutions, LLC*, in the Middle District of Florida, case number 3:20-CV-00738-TJC-PDB (the "Litigation") alleging failure to pay overtime compensation under the Fair Labor Standards Act ("FLSA").

2.     I authorized Plaintiff Shawn Poliner ("Plaintiff") and his attorney to make decisions on my behalf related to the Litigation.

3.     Plaintiff and Managed Labor Solutions, LLC ("MLS") have reached a settlement agreement, to be presented to the Court for approval.

4.     As part of the settlement, following Court approval, I will receive the gross amount of $4,968.81 in exchange for my execution of this Release. I consent to this settlement.

5.     Conditioned upon the entry of the Final Approval Order, and in exchange for the consideration listed in Section 4, I do hereby agree to dismiss the Litigation with prejudice and execute this Agreement which includes an agreement to release MLS as well as each of its and their present and former owners, stockholders, predecessors, successors, joint ventures, affiliates (including, without limitation, Horizon Facilities Services, Inc.), assigns, agents, directors, officers, board members, employees, representatives, insurers, attorneys, parents, subsidiaries, benefit plans, plan fiduciaries, affiliated divisions and companies, and all persons acting by, through, under, or in concert with any of them (each a "Released Party" and collectively the "Released Parties") from any and all claims (whether under state or federal law) related to their alleged failure to pay overtime, or any similar or related facts, which were or could have been asserted in this Litigation, including (without limitation) claims for overtime pay, minimum wages, non-payment of wages, misclassification, meal or rest periods, paid and unpaid time off, waiting time penalties, unfair business practices, and any other pay practices of any kind that accrued during my employment as a driver and transporter for MLS, relating back to the full extent of any applicable federal statute of limitations and continuing through the date of the filing of the complaint, including, without limitation, all state and federal claims for unpaid wages, and any and all related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

Dated: _____11/24/2020_____          _____
                                                                    Angel Vanderhorst

14001731 v1

## SETTLEMENT AGREEMENT AND RELEASE

1.      I, Godfrey Maina, opted into this litigation, captioned *Shawn Poliner v. Managed Labor Solutions, LLC*, in the Middle District of Florida, case number 3:20-CV-00738-TJC-PDB (the "Litigation") alleging failure to pay overtime compensation under the Fair Labor Standards Act ("FLSA").

2.      I authorized Plaintiff Shawn Poliner ("Plaintiff") and his attorney to make decisions on my behalf related to the Litigation.

3.      Plaintiff and Managed Labor Solutions, LLC ("MLS") have reached a settlement agreement, to be presented to the Court for approval.

4.      As part of the settlement, following Court approval, I will receive the gross amount of $37.66 in exchange for my execution of this Release. I consent to this settlement.

5.      Conditioned upon the entry of the Final Approval Order, and in exchange for the consideration listed in Section 4, I do hereby agree to dismiss the Litigation with prejudice and execute this Agreement which includes an agreement to release MLS as well as each of its and their present and former owners, stockholders, predecessors, successors, joint ventures, affiliates (including, without limitation, Horizon Facilities Services, Inc.), assigns, agents, directors, officers, board members, employees, representatives, insurers, attorneys, parents, subsidiaries, benefit plans, plan fiduciaries, affiliated divisions and companies, and all persons acting by, through, under, or in concert with any of them (each a "Released Party" and collectively the "Released Parties") from any and all claims (whether under state or federal law) related to their alleged failure to pay overtime, or any similar or related facts, which were or could have been asserted in this Litigation, including (without limitation) claims for overtime pay, minimum wages, non-payment of wages, misclassification, meal or rest periods, paid and unpaid time off, waiting time penalties, unfair business practices, and any other pay practices of any kind that accrued during my employment as a driver and transporter for MLS, relating back to the full extent of any applicable federal statute of limitations and continuing through the date of the filing of the complaint, including, without limitation, all state and federal claims for unpaid wages, and any and all related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

Dated: 11/24/2020 _____

GODFREY MAINA (Nov 24, 2020 14:16 EST)

Godfrey Maina

14001658 v1

## SETTLEMENT AGREEMENT AND RELEASE

1.      I, Joshua David Riley, opted into this litigation, captioned *Shawn Poliner v. Managed Labor Solutions, LLC*, in the Middle District of Florida, case number 3:20-CV-00738-TJC-PDB (the "Litigation") alleging failure to pay overtime compensation under the Fair Labor Standards Act ("FLSA").

2.      I authorized Plaintiff Shawn Poliner ("Plaintiff") and his attorney to make decisions on my behalf related to the Litigation.

3.      Plaintiff and Managed Labor Solutions, LLC ("MLS") have reached a settlement agreement, to be presented to the Court for approval.

4.      As part of the settlement, following Court approval, I will receive the gross amount of $2,109.05 in exchange for my execution of this Release. I consent to this settlement.

5.      Conditioned upon the entry of the Final Approval Order, and in exchange for the consideration listed in Section 4, I do hereby agree to dismiss the Litigation with prejudice and execute this Agreement which includes an agreement to release MLS as well as each of its and their present and former owners, stockholders, predecessors, successors, joint ventures, affiliates (including, without limitation, Horizon Facilities Services, Inc.), assigns, agents, directors, officers, board members, employees, representatives, insurers, attorneys, parents, subsidiaries, benefit plans, plan fiduciaries, affiliated divisions and companies, and all persons acting by, through, under, or in concert with any of them (each a "Released Party" and collectively the "Released Parties") from any and all claims (whether under state or federal law) related to their alleged failure to pay overtime, or any similar or related facts, which were or could have been asserted in this Litigation, including (without limitation) claims for overtime pay, minimum wages, non-payment of wages, misclassification, meal or rest periods, paid and unpaid time off, waiting time penalties, unfair business practices, and any other pay practices of any kind that accrued during my employment as a driver and transporter for MLS, relating back to the full extent of any applicable federal statute of limitations and continuing through the date of the filing of the complaint, including, without limitation, all state and federal claims for unpaid wages, and any and all related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

Dated:  11/24/2020
_____

Joshua Riley (Nov 24, 2020 14:07 EST)
_____
Joshua David Riley

14001761 v1

## SETTLEMENT AGREEMENT AND RELEASE

1.      I, James Watson, opted into this litigation, captioned *Shawn Poliner v. Managed Labor Solutions, LLC*, in the Middle District of Florida, case number 3:20-CV-00738-TJC-PDB (the "Litigation") alleging failure to pay overtime compensation under the Fair Labor Standards Act ("FLSA").

2.      I authorized Plaintiff Shawn Poliner ("Plaintiff") and his attorney to make decisions on my behalf related to the Litigation.

3.      Plaintiff and Managed Labor Solutions, LLC ("MLS") have reached a settlement agreement, to be presented to the Court for approval.

4.      As part of the settlement, following Court approval, I will receive the gross amount of $2,003.59 in exchange for my execution of this Release. I consent to this settlement.

5.      Conditioned upon the entry of the Final Approval Order, and in exchange for the consideration listed in Section 4, I do hereby agree to dismiss the Litigation with prejudice and execute this Agreement which includes an agreement to release MLS as well as each of its and their present and former owners, stockholders, predecessors, successors, joint ventures, affiliates (including, without limitation, Horizon Facilities Services, Inc.), assigns, agents, directors, officers, board members, employees, representatives, insurers, attorneys, parents, subsidiaries, benefit plans, plan fiduciaries, affiliated divisions and companies, and all persons acting by, through, under, or in concert with any of them (each a "Released Party" and collectively the "Released Parties") from any and all claims (whether under state or federal law) related to their alleged failure to pay overtime, or any similar or related facts, which were or could have been asserted in this Litigation, including (without limitation) claims for overtime pay, minimum wages, non-payment of wages, misclassification, meal or rest periods, paid and unpaid time off, waiting time penalties, unfair business practices, and any other pay practices of any kind that accrued during my employment as a driver and transporter for MLS, relating back to the full extent of any applicable federal statute of limitations and continuing through the date of the filing of the complaint, including, without limitation, all state and federal claims for unpaid wages, and any and all related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

Dated: 11/23/2020
_____

James Watson (Nov 25, 2020 23:15 EST)
_____

James Watson

14001702 v1

## SETTLEMENT AGREEMENT AND RELEASE

1.      I, Jerry Hooks, opted into this litigation, captioned *Shawn Poliner v. Managed Labor Solutions, LLC*, in the Middle District of Florida, case number 3:20-CV-00738-TJC-PDB (the "Litigation") alleging failure to pay overtime compensation under the Fair Labor Standards Act ("FLSA").

2.      I authorized Plaintiff Shawn Poliner ("Plaintiff") and his attorney to make decisions on my behalf related to the Litigation.

3.      Plaintiff and Managed Labor Solutions, LLC ("MLS") have reached a settlement agreement, to be presented to the Court for approval.

4.      As part of the settlement, following Court approval, I will receive the gross amount of $451.94 in exchange for my execution of this Release. I consent to this settlement.

5.      Conditioned upon the entry of the Final Approval Order, and in exchange for the consideration listed in Section 4, I do hereby agree to dismiss the Litigation with prejudice and execute this Agreement which includes an agreement to release MLS as well as each of its and their present and former owners, stockholders, predecessors, successors, joint ventures, affiliates (including, without limitation, Horizon Facilities Services, Inc.), assigns, agents, directors, officers, board members, employees, representatives, insurers, attorneys, parents, subsidiaries, benefit plans, plan fiduciaries, affiliated divisions and companies, and all persons acting by, through, under, or in concert with any of them (each a "Released Party" and collectively the "Released Parties") from any and all claims (whether under state or federal law) related to their alleged failure to pay overtime, or any similar or related facts, which were or could have been asserted in this Litigation, including (without limitation) claims for overtime pay, minimum wages, non-payment of wages, misclassification, meal or rest periods, paid and unpaid time off, waiting time penalties, unfair business practices, and any other pay practices of any kind that accrued during my employment as a driver and transporter for MLS, relating back to the full extent of any applicable federal statute of limitations and continuing through the date of the filing of the complaint, including, without limitation, all state and federal claims for unpaid wages, and any and all related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

Dated: ___112420___        _A. H. Hooks_____

Jerry Hooks (Nov 24, 2020 14:08 EST)

Jerry Hooks

14001734 v1

## SETTLEMENT AGREEMENT AND RELEASE

1.    I, Amy Pigg, opted into this litigation, captioned *Shawn Poliner v. Managed Labor Solutions, LLC*, in the Middle District of Florida, case number 3:20-CV-00738-TJC-PDB (the "Litigation") alleging failure to pay overtime compensation under the Fair Labor Standards Act ("FLSA").

2.    I authorized Plaintiff Shawn Poliner ("Plaintiff") and his attorney to make decisions on my behalf related to the Litigation.

3.    Plaintiff and Managed Labor Solutions, LLC ("MLS") have reached a settlement agreement, to be presented to the Court for approval.

4.    As part of the settlement, following Court approval, I will receive the gross amount of $1,664.64 in exchange for my execution of this Release. I consent to this settlement.

5.    Conditioned upon the entry of the Final Approval Order, and in exchange for the consideration listed in Section 4, I do hereby agree to dismiss the Litigation with prejudice and execute this Agreement which includes an agreement to release MLS as well as each of its and their present and former owners, stockholders, predecessors, successors, joint ventures, affiliates (including, without limitation, Horizon Facilities Services, Inc.), assigns, agents, directors, officers, board members, employees, representatives, insurers, attorneys, parents, subsidiaries, benefit plans, plan fiduciaries, affiliated divisions and companies, and all persons acting by, through, under, or in concert with any of them (each a "Released Party" and collectively the "Released Parties") from any and all claims (whether under state or federal law) related to their alleged failure to pay overtime, or any similar or related facts, which were or could have been asserted in this Litigation, including (without limitation) claims for overtime pay, minimum wages, non-payment of wages, misclassification, meal or rest periods, paid and unpaid time off, waiting time penalties, unfair business practices, and any other pay practices of any kind that accrued during my employment as a driver and transporter for MLS, relating back to the full extent of any applicable federal statute of limitations and continuing through the date of the filing of the complaint, including, without limitation, all state and federal claims for unpaid wages, and any and all related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

Dated: 12/01/2020

Amy Pigg (Dec 1, 2020 15:33 PST)

Amy Pigg